**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

VINCENT GOULD, d/b/a We the People          )
Forms and Service Center of Nashville,          )
d/b/a We the People Forms and Service Centers     )
USA, Inc, and WE THE PEOPLE FORMS AND     )
SERVICE CENTERS USA, INC.,          )          Civil No. 3:04-0971
          )          Judge Trauger
          Appellants,          )
          )
v.          )
          )
RICHARD F. CLIPPARD, *et al.*,          )
          )
          Appellees.          )

**<u>MEMORANDUM</u>**

On this appeal from a decision of the United States Bankruptcy Court for the Middle District of Tennessee,[1] Appellants seek review of that court's Memorandum and Order sanctioning Appellant We the People USA for violations of 11. U.S.C. § § 110(b)(1) and (c)(1); sanctioning Appellants Vincent Gould and We the People Nashville for violations of 11. U.S.C. § § 110(f), (g); disallowing and ordering turnover of all but $30 of the fees paid to Appellants pursuant to 11. U.S.C. § § 110(h)(2); certifying and recommending to the United States District Court that Appellants be sanctioned pursuant to § 110(i) for violations of § 110; and granting the request of the United States Trustee for an injunction against Appellants pursuant to § 110(j).

Appellee has responded to Appellants' arguments and Appellants have replied. For the reasons discussed herein, the Bankruptcy Court's Order will be affirmed in all respects relevant to this case. Des. Rec. 2.

---

[1] The bankruptcy record is listed in this court as Docket No. 6. Items contained solely within that record will be cited as Designations of Record ("Des. Rec.").

1

## I. Statement of Facts and Procedural History

Mr. Finch, Mr. Toalson, Ms. Smith and Ms. Inmon (hereinafter "Debtors") consulted Vincent and Shannon Gould and We the People Nashville (hereinafter "Goulds" and "WTP") to prepare chapter 7 bankruptcy petitions, after which each filed a petition pro se. The Goulds were self-described partners in operating a bankruptcy petition preparer ("BPP") business they called "We the People Nashville" which the Goulds stated was a franchise of the franchisor We the People USA , Inc. ("WTP USA"). In the cases of Mr. Finch, Mr. Toalson, Ms. Smith, the appointed chapter 7 trustee, Robert H. Waldschmidt, after finding inaccuracies and omissions in their Statements and Schedules, filed actions seeking to deny their discharge pursuant to 11 U.S.C. § 727 (hereinafter "Waldschmidt Cases"). Thereafter, each of the three above named debtors filed third-party complaints against Vincent and Shannon Gould and WTP (hereinafter "Third Party Actions") alleging that their negligence, breach of contract, and / or violations of 11 U.S.C. 110 led to the omissions and inaccuracies in their bankruptcy filings. In the case of Ms. Inmon, the United States Trustee (hereinafter "UST") filed an adversary proceeding naming Vincent Gould, We The People Forms and Service Center of Nashville and We The People Forms and Service Center, USA, Inc. seeking damages and injunctive relief for alleged violations of 11 U.S.C. § 110, which governs the conduct of bankruptcy petition preparers.[2]

The bankruptcy court dismissed the chapter 7 trustee's § 727 actions against Mr. Finch, Mr. Toalson and Ms. Smith and those actions will receive no further consideration.

---

[2] The UST's complaint named John David Moore as a defendant. The Bankruptcy Court dismissed the complaint as to Mr. Moore because no proof of wrongdoing on his part was presented. Memorandum Opinion, n. 15.

## II.  Standard of Review

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §158(a).  28 U.S.C. §158(a) (2005).  In hearing an appeal from a bankruptcy court's order, the district court reviews the bankruptcy court's findings of fact for clear error and the court's conclusions of law *de novo*. *Rembert v. ATT&T Universal Card Servs. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998), *cert. denied*, 525 U.S. 978 (1998); *see also In re Caldwell*, 851 F.2d 852, 857 (6th cir. 1988).  Mixed questions are to be separated into their component parts and reviewed under the appropriate standard.  *Mayor of Baltimore v. W. Va. (In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 527 (6th Cir.), *cert. denied*, 537 U.S. 880 (2002).

## *ANALYSIS*

Appellants raise two groups of argument.  First, are arguments addressing the Bankruptcy Court's findings of fact and conclusions of law as contained in the Memorandum Opinion, which the court answers in Part III *infra*.  Second, are arguments addressing due process and constitutional propositions not addressed in the Bankruptcy Court's Memorandum Opinion , which the court answers in Part IV *infra*.

The Appellees argue that numerous courts have addressed the issues herein and rejected Appellants arguments each time.[3]

---

[3]  Appellees Brief, n. 25 citing: *In re Boettcher*, 262 B.R. 95 (Bankr. N.D. Cal. 2001) (We the People); *In re Moore*, 283 B.R. 852 (Bankr. E.D.N.C. 2002); *In re Doser*, 281 BR. 292 (Bankr. D. Idaho 2002) *aff'd In re Doser*, 412 F.3d 1056 (9th Cir. 2005); *In re Buck*, 290 B.R. 758 (Bankr. C.D.Cal. 2003) *aff'd In re Buck*, 307 B.R. 157 (C.D.Cal. 2003); *In re Douglas*, Bankr. Md. 2003); *In re Evans*, 153 B.R. 960 (Bankr. E.D.Pa. 1993); *In re Moore*, 290 B.r. 297 (Bankr. E.D.N.C. 2003); *In re Shoup*, 290 B.R. 768 (Bankr. C.D.Cal. 2003) *aff'd In re Shoup*, 307 B.R. 164 (C.D.Cal. 2004); *In re Graham*, 2004 WL 1052963 (Banr. M.D.N.C. 2004) *aff'd Anderson v. West*, 2005 WL 1719934 (M.D.N.C. 2005); *In re Barcelo*, 313 B.R. 135 (Bankr.

3

# III.

**A. The Bankruptcy Court does have authority pursuant to 11 U.SC. § 110 to enter an order when the allegations of breach of contract and negligence are proven.**

1.      Appellants apparently contend that the Court should look to "11. U.S.C. § 1481" for either the source of or limitations on the Bankruptcy Court's contempt powers in this situation. Appellants Brief, p. 16.  The Court presumes that Appellants are referring to 28 U.S.C. § 1481 as it related to bankruptcy courts and district courts.  That provision never reached its effective date as set forth in § 402(b) of Public Law 95-598 because it was repealed.  Pub. L. 98-353, Title I, §§ 113, 98 Stat. 343, 346, eff. July 10, 1984; *see Celotex Corp. v. Edwards*, 514 U.S. 300, 329, 115 S.Ct. 1493, 1509 (Stevens, J. dissenting) (history and repeal of 28 U.S.C. § 1481).  While it may be true that a BPP may be subject to a contempt order of a bankruptcy court for failure to comply with that court's order pursuant to its finding of violations of § 110, *see In re Walker*, 257 B.R. 493, 496 (Bankr. N.D. Ohio 2001) (11 U.S.C. § 105 provides bankruptcy court with inherent power to enforce BPP's compliance with its lawful orders), Appellants offer no authority for their proposition that a violation of § 110, for which Congress provided specific penalties within each subsection, must be dealt with solely as an act of contempt.

2.      Appellants contend that 11 U.S.C. §110 grants the Bankruptcy Court no authority to "adjudicate or regulate matters concerning violations of § 110."  Appellants Brief, p. 17.  If Appellants' argument is that all findings under 110 must be certified to the district court, then the court agrees with the Bankruptcy Court's rejection of this contention.  Memorandum Opinion, n. 13.

---

E.D.N.Y. 2004); *In re Rose*, 314 B.R. 663 (Bankr. E.D.Tenn. 2004); *In re Paysour*, 313 B.R. 109 (Bankr. E.D.N.Y. 2004) (parenthetical phrases omitted).

The Bankruptcy Court stated that the § 110 issues presented in the Third Party Actions involved §§ 110(f), (g), (h) and (i). Memorandum Opinion, pp. 15 - 18. The Bankruptcy Court approved of the reasoning of other courts in finding that the certification requirement is limited to § 110(i) and that the Bankruptcy Court had the authority to impose the fines and injunctions provided in §§ 110(f), (g), (h) and (j). Memorandum Opinion, n. 13, (citing cases: *In re Graves*, 279 B.R. 266, 271 (9th Cir. BAP 2002) (plain text of statute shows nothing in §§ 110(b) - (h) & (j) and §110(i) to suggest that the bankruptcy court is not authorized to impose the remedies prescribed therein, citing concurring views in other circuits) (internal citations omitted); *In re Graham,* 2004 WL 10592963 (Bankr. M.D.N.C. 2004), *In re Rose,* 413 B.R. 663, 683 (Bankr. E.D. Tenn. 2004)). The Bankruptcy Court, in joining what it viewed to be the majority view, recognized that a minority of bankruptcy courts had referred all findings under § 110 to the district court. Memorandum Opinion, n. 13 (citing *In re Gomez,* 259 B.R. 379, 387 (Bankr. D. Colo. 2001)).

This court agrees with the Bankruptcy Court that a plain reading of the statute indicates that § 110(i) does not require that a bankruptcy court refer all findings under § 110 to the district court and, therefore, there are no limitations on the Bankruptcy Court's authority to implement the §§ 110 (f), (g), (h) and (j) provisions within the Third Party Actions.

3.      Appellants contend that because Debtors, and not the UST, brought the claims for common law negligence and breach of contract, the Bankruptcy Court could not rely on *Martini v. We the People Forms & Service Centers USA, Inc. (In re Barcelo)*, 313 B.R. 135 (Bankr. E.D.N.Y. 2004) (hereinafter "*In re Barcelo*") to determine that the Third Party Actions were core proceedings. Appellants Brief, p. 17.

5

The Bankruptcy Court applied and adopted the reasoning of *In re Barcelo* in finding that all § 110 matters are core proceedings because it agreed with the *In re Barcelo* court that all § 110 matters "arise in" Title 11 and that the Third Party Actions were "core" matters potentially affecting the administration of Debtors' estates.[4]  Memorandum Opinion, p. 27.

The court can find nothing in the reasoning of *In re Barcelo* or the Memorandum Opinion in its application of *In re Barcelo* or the language of the statue that indicates why the presence of the UST as plaintiff as compared to Debtors negatively alters either the jurisdictional or substantive analysis of the Bankruptcy Court.

The Bankruptcy Court went on to reason that Debtors' breach of contract and negligence causes of action were "[a]t [] heart [] about violations of § 110(i)" and that a determination under § 110(i) would be directed at determining if Appellants' conduct is encompassed in the fraud and unfair or deceptive acts addressed by the statute.  Memorandum Opinion,  n.6 (citing *In re Lucas,* 312 B.R. 559 (Bankr. D.Md. 2004) (treating as 110(i) debtor's allegations of negligence and unauthorized practice) and *In re Gomez,* 259 B.R. 379) (similar allegations and treatment)).

Appellants argue that the above reasoning was error because the common law negligence and breach of contract claims are severable from the bankruptcy adversary proceeding because such causes of action of do not arise within the context of bankruptcy and do not affect the substantive rights of debtors and creditors.  Appellants Brief, p. 17.  Appellants offer *Woods v. Passodelis (In re Passodelis)*, 234 B.R. 52 (Bankr. W.D.Pa. 1999) in support of their argument that the claims of common law negligence and breach of contract are severable from the adversary proceedings.

---

[4]  This issue is addressed further *infra.*

There, plaintiffs sued the debtors and a non-debtor insurance company (hereinafter "Penn Mutual") in state court; the plaintiffs subsequently sought to remove their suit to the bankruptcy court. *Id*. at 56 - 59. The plaintiffs' state court complaint contained several causes of action: some were plead only against Penn Mutual and not the debtors while other were plead against the debtors and Penn Mutual. *Id*. Penn Mutual, the non-debtor co-defendant,[5] argued in response that, if the bankruptcy court had subject matter jurisdiction, that jurisdiction was noncore, so that the bankruptcy court must either remand to the state court or mandatorily abstain because Penn Mutual would not consent to the entry of final orders or judgments by the bankruptcy court. *Id*.

The bankruptcy court found that none of the causes of action were core matters because they were matters that originated in state court actions and therefore "[o]bviously could not have arisen only within the context of a bankruptcy case. *Id*. at 61 (citing *In re Wood*, 825 F.2d 90, 96 - 97 (5th Cir. 1987); *Halper v. Halper*, 164 F.3d 830, 836 (3rd Cir. 1999); 1 *Collier on Bankruptcy*, para. 3.02[2] at 3-35 (Bender 1998). Completing the jurisdiction analysis, the bankruptcy court, applying *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 - 96 (3d. Cir. 1984), concluded that the allegations pertaining to Penn Mutual and the debtors were related to, noncore matters, not the "arising under" or "arising in" type, with the potential to only "conceivably" result in claims against the debtor, for example, for indemnification or contribution by Penn Mutual. *In re Passodelis*, 234 B.R. at 63. Consequently, because Penn Mutual had met the

---

[5] The court notes the difference in posture with the instant case: in *In re Passodelis*, a non-debtor plaintiff was suing a debtor and a non-debtor as a co-defendants. Here, Appellants are non-debtors, but the third party plaintiffs are debtors.

requirements of 28 U.S.C. 1334(c)(2)[6], the causes of action naming Penn Mutual were subject to mandatory abstention. *Id*. at 64 (citing, among others, *In re Argus Group 1700, Inc.,* 206 B.R. 737, 747 - 48 (Bankr. E.D.Pa. 1996)). As to the allegations naming only Penn Mutual, *Pacor* dictated that the bankruptcy court lacked jurisdiction entirely. *Id* at 63. Therefore, the plaintiffs' attempt to remove those causes of action to the bankruptcy court under 28 U.S.C. 1452 were improper and ineffective. *Id.* at 64.

The focus of the *Passodelis* court was on the jurisdictional implications of the origination of the causes of action in a state court and the non-debtor status of both defendant Penn Mutual and plaintiffs, and not on the substance of the allegations as Appellants imply. Given that the court has agreed with the Bankruptcy Court's determination that the matters at issue here are squarely within the Bankruptcy Court's core jurisdiction, the *Passodelis* analysis is inapposite.

**B**. **The Bankruptcy Court applied the correct standard of proof.**

Appellants argue that the Bankruptcy Court failed to apply a clear and convincing proof standard because § 110(i) provides for criminal penalties.[7] Appellants Brief, p. 25. Appellees correctly state that matters under § 110 are civil and not criminal matters. *See In re Barcelo*, 313

---

[6] 28 U.S.C. 1334(c)(2) states:
Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. 28 U.S.C. 1334(c)(2) (2006).

[7] Although Appellants argue generally that § 110 authorizes criminal penalties, the Memorandum Opinion does not contain a discussion of whether § 110 provides for criminal penalties. As a related matter not present in the Opinion, the question of whether Appellants were entitled to a jury trial is addressed below.

8

B.R. at 151.  Appellees Brief, p. 27.  In addition, the Bankruptcy Court's correct determination that the matters here are core bankruptcy matters indicates that § 110 is a civil statute.[8]

In Ms. Inmon's case, the UST sought, and the Bankruptcy Court issued, an injunction pursuant to 110(j) applying equally against Vincent Gould, WTP Nashville and WTP USA. Memorandum Opinion, p. 55.  Appellants contend that a finding and an order under 110(j) based on an evidentiary standard lower than a clear and convincing standard is a violation of due process.  Appellants argue the clear and convincing standard required is found in proceedings to sanction an attorney under the Code of Professional Responsibility because the Bankruptcy Court's decision treated Appellants as though they were un-licensed attorneys.  Appellants Brief, p. 26.  In arguing that the Bankruptcy Court properly applied a preponderance of the evidence standard, Appellees point out the irony of Appellants arguing for such a standard while also contending that they have not engaged in the practice of law.  Appellees Brief, pp. 27 - 28; n. 138.  The court finds that Bankruptcy Court applied the correct standard of proof.

Here, the Bankruptcy Court did not have to, and did not, employ § 105 to craft a sanction because Appellants' conduct is clearly governed by a distinct section of the Bankruptcy Code. Section 105 of the Code grants the Bankruptcy Court the inherent power "to impose sanctions for a pattern of . . . conduct that transcends conduct addressed by particular rules or statutes." *See Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 412 (332 B.R. 404 2005) (citing *In re DeVille,* 280 B.R. 483, 492 (9th Cir. BAP 2002) (reviewing for abuse of discretion exercise of § 105 powers to sanction) and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 51, 111S.Ct. 2133, 115

_____

[8]  Appellants incorrectly posit that *In re Dyer*, 322 F.3d 1178 (9th Cir. 2003) provides relevant authority.  The question there was whether a bankruptcy court's exercise of its power pursuant to § 105 in fashioning a contempt sanction for a violation of that court's order rose to the level of a punitive sanction.  *Id*. at 1192.

9

L.Ed.2d 27 (1991) (exercise of inherent power proper whether or not conduct at issue is governed by statute or rule)).  A bankruptcy court's order of sanction may require the application of the clear and convincing standard.  *See e.g. In re Sheridan*, 362 F.3d 96 (1st Cir. 2004) (courts frequently require clear and convincing standard for extreme sanctions) (internal citations omitted).

In contrast with most state laws, Congress has chosen the preponderance standard for statutory causes actions for fraud.  *Grogan v. Garner*, 498 U.S. 279 288 - 289, 11 S.Ct. 654, 21 Bankr. Ct. Dec 342 (1991) (collecting statutes and cases, including 11 U.S.C. 727(a)(4) and legislative history applying thereto).  The preponderance standard goes to how convincing is the evidence, not what facts must be proven, and, if the result is an "even balance," the party with the burden of persuasion must lose.  *Metropolitan Stevedore Co. v Rambo*, 521 U.S. 121, n. 9, 117 S.Ct. 1953, 138 L.Ed.2d 327 (1997) (internal citations omitted).

Here, the question of the appropriate standard of proof is subsumed into the standard of review, that is, whether the Bankruptcy Court's findings were clearly erroneous.  29 Am Jr. 2d §157 (1994).  Even if a higher standard would be required, the Bankruptcy Court received Appellants' own documents, included in the Joint Stipulation, which Appellants testified they provided to the debtors, and the testimony of the debtors of their clear recollections of the dealings with Appellants.  *See e.g. First Natl. Bank of Roland v. Rush*, 30 Ark.App. 272, 279, 785 S.W.2d 474, 479 (C.A. Ark. 1990) (when credible witness testifies with a distinct memory, states details with exactness, so that testimony is direct, weighty and convincing, court's findings

cannot be clearly erroneous). In either light, the court finds the evidence relied upon by the Bankruptcy Court does not fail a clearly erroneous standard of review.[9]

In the cases of Mr. Finch, Mr. Toalson, Ms. Smith and Ms. Inmon ,the Bankruptcy Court found Appellants violated §§ 110(f), (g) and (h).

As to § 110(f)[10], the Bankruptcy Court found that each of the above-named debtors had a specific and credible recollection of Appellants' use of "44-Legal" in their materials and advertising. Memorandum Opinion, p. 22 - 23. The Bankruptcy Court noted that Appellants did not controvert this evidence in the cases of Mr. Finch, Mr. Toalson, Ms. Smith. Memorandum Opinion, p. 23.

In Ms. Inmon's case, the Bankruptcy Court found that the UST presented "overwhelming evidence," through six exhibits and Ms. Inmon's specific recollections, of Appellants' use of

---

[9] The Bankruptcy Court described Ms. Inmon's testimony as follows:
> Ms. Inmon herself was an articulate and thorough witness, and provided credible and understandable testimony about her dealings with the defendants. She noted several instances where her workbook answers were supplied by someone else in her absence and without her permission, instances where questions had been marked through by someone else without her permission, instances where Mr. Gould "helped" her answer questions, and instances where information was in someone else's handwriting without her permission and in her absence. Ms. Inmon's discharge was not being challenged and she had no motive to distort or otherwise exaggerate the truth. Her testimony was credible and independently supports this court's conclusions.

Memorandum Opinion, p. 52 - 53.

[10] The text of 11 U.S.C. 110(f) effective at the time relevant here states:
(1) A bankruptcy petitioner preparer shall not use the word "legal" or any similar term in any advertisements, or advertise under any category that includes the word "legal" or any similar term.
(2) A bankruptcy petitioner preparer shall be fined not more than $500 for each violation of paragraph (1).

"44-Legal" in their phone number and advertising. Memorandum Opinion, p. 50. In Ms.

Inmon's case, the Designated Record includes the Joint Stipulations of the United States Trustee

and Vincent Gould, d/b/a We the People Forms and Service Center of Nashville, WE THE

PEOPLE FORMS AND SERVICE CENTERS USA, INC., a California corporation, and John

David Moore" filed on July 28, 2004, which includes the exhibits referenced above. Des. Rec.,

doc. #9.

In addition to the foregoing, the Bankruptcy Court viewed the several uses by Appellants

of "44-LEGAL" in their business materials as clear and unrebuttable violations of § 110(f).

Memorandum Opinion, pp. 22, 50 (citing *In re Gomez*, 259 B.R. 379, 385 (Bankr.D.Colo.2001)

(text of § 110 prohibiting use of terms without delineating any exceptions effectively establishes

strict liability for violation). Appellants offer no authority *contra*. Whether tested under a

preponderance or clear and convincing standard, the court will not disturb the Bankruptcy

Court's findings regarding violations of § 110(f).

As to violations of § 110(g)[11] the Bankruptcy Court heard testimony from Ms. Smith, Mr.

Toalson and Mr. Finch, including the presentation of a receipt by Mr. Finch, that Debtors made

payments by money orders or cash to Appellants for "filing fees and court costs" in

contravention of § 110(g). Again, the Bankruptcy Court noted that Mr. and Mrs. Gould offered

no rebuttal. Memorandum Opinion, p. 24. Appellants do not contend otherwise now. In the

case of Ms. Inmon, no proof in the form of testimony or receipts was offered, and the

---

[11] The text of 11 U.S.C. 110(g) effective at the time relevant here states:
(1) A bankruptcy petition preparer shall not collect or receive any payment from the debtor or on behalf of the debtor for the court fees in connection with filing the petition.
(2) A bankruptcy petition preparer shall be fined not more than $500 for each violation of paragraph (1).

12

Bankruptcy Court found no violation there. As above, the court will not disturb the Bankruptcy Court's findings regarding violations of § 110(g).

As to §110(h), the Bankruptcy Court applied § 110(h)(2) in determining what portion of Appellants' fee to disallow as excessive.[12] The Bankruptcy Court looked to other courts in determining that the fee of a BPP is excessive when the BPP's services "accomplished little benefit and, in some instances, harmed the debtor or put his or her bankruptcy discharge at risk." Memorandum Opinion, p. 25 citing *United States Trustee v. Womack (In re Paskel)*, 201 B.R. 511, 518 (Bankr. E.D. Ark. 1996) *appeal dismissed,* 201 B.R. 964 (Bankr. E.D. Ark. 1996), *aff'd*, 162 F.3d 1164 (8th cir. 1998). The Bankruptcy Court noted that the *In re Paskel* court listed among the harms that render a BPP's fee excessive are the need for a debtor to subsequently hire an attorney to correct deficiencies in the debtor's schedules and the endurance by the debtor of an adversary proceeding seeking denial of discharge. Memorandum Opinion, p. 25.

It is clear that each of the three debtors in the Walschmidt Cases have endured an adversary proceeding seeking denial of his or her discharge caused by deficiencies in his or her bankruptcy schedules for which each paid Appellants a fee to prepare. Each of the three Waldschmidt debtors had to obtain legal representation to deal with negative consequences of Appellants' services. Based on that result, the Bankruptcy Court ordered Appellants to turn over the entire fee charged to the three debtors in the Waldschmidt Cases.

_____

[12] The text of 11 U.S.C. 110(h)(2) effective at the time relevant here states:
The court shall disallow and order the immediate turnover to the bankruptcy trustee of any fee referred to in paragraph (1) found to be in excess of the value of services rendered for the documents prepared. An individual debtor may exempt any funds so recovered under section 522(b).

Case 3:04-cv-00971    Document 58    Filed 03/28/06    Page 13 of 38 PageID #: 264

As Appellees note, other courts has placed the burden of proof upon the BPP to demonstrate that fees are reasonable in light of § 110(h). Appellee Brief, p. 33; n. 159. In these circumstances, other courts have analogized from §§ 330(a)(3)(A) and (B)[13] for basing the reasonable amount of compensation on time and rate. *In re* Bush, 275 B.R. 69, 85 - 86 (Bankr. D. Idaho 2002); *In re Doser,* 281 B.R. at 313.

The Bankruptcy Court determined from testimony that Mr. Finch learned from the trustee at the § 341 meeting that his Statements and Schedules contained omissions. Memorandum Opinion, p. 5. Mr. Finch further testified that he then hired an attorney to assist him with correcting the omissions on his Schedules and Statements that resulted from following the "advice" provided by Appellant WTP. Memorandum Opinion, p. 6.

The Bankruptcy Court noted that Mr. Toalson testified that, as a result of the trustee's questioning at the § 341 meeting, he learned that his Statements and Schedules prepared by Gould were deficient because of omissions. Memorandum Opinion, p. 8. Mr. Toalson further testified that, because of lack of funds, no attorney would assist him other than Legal Services. Memorandum Opinion, p. 9.

The Bankruptcy Court noted that Ms. Smith testified that she also learned from the trustee at the § 341 meeting that her Statements and Schedules prepared by Appellants Gould

---

[13] The text of 11 U.S.C. §§ 330(a)(3)(A) and (B) effective at the time relevant here states:

(3)(A) In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including
(A) the time spent on such services;
(B) the rates charged for such services

14

contained errors and omissions. Memorandum Opinion, p. 10. Ms. Smith also testified that she hired an attorney to correct and refile her petition.

The foregoing findings of the Bankruptcy Court fully support that court's reasoning that, "[b]ased on the proof in this case, the value of services provided to these debtors is unquestionably negative" such that "[t]he services rendered to these debtors by the Goulds and WTP had no value to the debtors." Memorandum Opinion, p. 26.

The Bankruptcy Court determined that a fair charge to Ms. Inmon for Appellants' typing services was no more than $30. Memorandum Opinion, p. 52. Ms. Inmon did not face a dischargeability complaint. Memorandum Opinion, p. 52. However, the Bankruptcy Court was able to construct from the testimony of Ms. Inmon and Mr. Gould a table of deficiencies contained in Ms. Inmon's Statements and Schedules. Memorandum Opinion, p. 43 -44. The testimony of the Goulds in Ms. Inmon's case addressed nothing more than their costs of delivering their services. Memorandum Opinion, p. 52. Contrasting the deficiencies of Ms. Inmon's Statements and Schedules with the lack of testimony from the Goulds as to the value to Ms. Inmon of WTP's services, the court concludes that the Bankruptcy Court did not abuse its discretion under § 110(h)(2) in determining that the value of WTP's typing services was $30. *In re Moffett*, 263 B.R. 805, 816 (Bankr. W.D. Ky. 2001)(allowing BPP maximum fee of $20 per hour with maximum of $100 for typing services only); 2 Lawrence P. King et al., *Collier On Bankruptcy* ¶ 110.09, at 110-21 to 22 (15th ed. rev.2005) (collecting cases where BPP fees determined under § 110(h)(2) based on typing costs); *see also In re Brokenbough*, 197 B.R. 839, 844 (Bankr. S.D. Ohio 1996) (BPP's services of negligible value where petition prepared by BPP accomplishes little else than invoking court's jurisdiction).

Appellants argue that their fee should not be based solely on the charge for typing a petition. Appellants argue that there are some activities for which a BPP can seek compensation that fall between the unauthorized practice of law and the mere preparation of a document for filing as allowed under § 110, such as filing petitions, providing copies of petitions and providing prospective Title 11 petitioners with materials containing general information from which the prospective petitioner can determine which words and numbers should be given to the BPP for typing. Appellants' Brief, pp. 40 & 42. Appellants also reply that courts have approved a range of BPP fees. Appellants Reply Brief, p. 17. Appellees contend that the weight of the cases shows that, other than typing, any other BPP service and any fee for non-typing services is statutorily prohibited.[14] Appellee Brief, pp. 34.

---

[14] The Bankruptcy Court's analysis was thorough on this point. "'Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively restricting 'petition preparers' to rendering only 'scrivening/typing' services.' *See In re Guttierez, 248 B.R. 287* (Bankr.W.D.Tex. 2000)." Memorandum Opinion, p. 37. The Bankruptcy Court cited the following additional authority, to wit: *Hastings v. United States Trustee (In re Agyekum)*, 225 B.R. 695, 702 (9th Cir. BAP1998) (preparer's use of questionnaire which solicited information he then used to complete petitions was unauthorized practice of law); *In re McDaniel*, 232 B.R. 674, 679 (Bankr.N.D.Tex.1999) (preparer gave clients unauthorized legal advice when he "applie[d] the statutes, rules, and information from publications to the facts of the particular cases" and when he "selected how creditors would be treated in the case"); *In re Moore*, 232 B.R. 1, 8 (Bankr.D.Me.1999) (preparer gave legal advice without a license by informing debtor about bankruptcy chapters, selecting her exemptions, and opining on her ability to dispose of assets); *Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 433-34 (Bankr.D.Mont.1999) (preparer engaged in unauthorized practice of law when she advised debtors of available exemptions, "determined where property and debts were to be scheduled, summarized and reformulated information solicited from clients, and generated the completed bankruptcy forms"); *In re Gabrielson*, 217 B.R. 819, 826-27 (Bankr.D.Ariz.1998) (finding that advising debtors about exemptions and which bankruptcy chapter to file, as well as drafting pleadings, is the practice of law); *In re Kaitangian*, 218 B.R. 102, 110-13 (Bankr.S.D.Cal.1998) (finding that preparer engaged in unauthorized practice of law by advising debtors about exemptions, selection of appropriate chapters, reaffirmation of debts, the timing of bankruptcy filing, classification of debt, and the dischargeability of student loans); *United States Trustee v. Tank (In re Stacy)*, 193 B.R. 31, 39 (Bankr.D.Or.1996) (preparer's practices constitute unauthorized practice of law because his activities "involve the exercise of informed or trained

16

However, § 110(h)(2) directs the bankruptcy court to determine whether a fee received by a BPP from the debtor is in excess of the "value of the services rendered for the documents prepared." § 11 U.S.C. § 110(h)(2). As the cases demonstrate, a determination of the value of the distinct service of preparing a document for filing can properly result, as it did here, in an order disallowing and requiring turnover of the entire fee.

Considering the foregoing, the Bankruptcy Court properly found by a preponderance of the evidence that Appellants had violated §§ 110(f), (g), and (h).

## C. The Bankruptcy Court correctly found that Appellants' conduct violated § 110 as unfair and deceptive, whether that conduct was either the unauthorized practice of law or negligent.

The Bankruptcy Court, in examining Appellants' conduct through the lens of § 110(i), correctly determined that Appellants' conduct was of the type triggering the application of § 110(i), whether that "conduct is characterized as negligent, or the unauthorized practice of law." Memorandum Opinion, p. 32. The Bankruptcy Court reasoned that the elements of common law negligence include proof of "conduct falling below the applicable standard of care that amounts to a breach of that duty." Memorandum Opinion, p. 31, citing *Gunter v. Laboratory Corp. of America*, 121 S.W.3d 636, 639 (Tenn. 2003). While stating that neither Tennessee law nor the Sixth Circuit had addressed whether the "standard of care for a non-attorney attempting to

discretion in advising another of his or her legal rights and duties"); *In re Lyvers*, 179 B.R. 837, 842 (Bankr.W.D.Ky.1995) (preparer engaged in unauthorized practice by answering debtors' questions concerning completion of bankruptcy petitions and advising debtors about exemptions); *In re Bright*, 171 B.R. 799, 803-05 (Bankr.E.D.Mich.1994) (preparer's activities constituted unauthorized practice of law). *See also In re Gavin*, 181 B.R. 814, 821 (Bankr.E.D.Pa.1995).
Memorandum Opinion, n. 11.

practice law would necessarily be that for a practicing attorney," the Bankruptcy Court reasoned that a lower standard would not be sound. Memorandum Opinion, n. 8.[15]

The court agrees that the Bankruptcy Court's application of that standard was sound when the Bankruptcy Court found numerous examples of negligence on the part of Appellants that lead to the deficiencies and omissions that formed the allegations of the Waldschmidt § 727 actions. Memorandum Opinion, p. 31 - 32.[16] Equally, the Bankruptcy Court found Appellants unable to recollect their dealings with or counter the debtors' clear recollection of those dealings.

What Appellants misapprehend is that, when they propose that there is unprohibited conduct between typing petitions, as allowed by the Code, and the unauthorized practice of law, they must offer some authority that demonstrates they are not doing so at their peril, as the Bankruptcy Court stated. Memorandum Opinion, p. 53 (When the defendant acted beyond their promised role of "typing service" or, as paraphrased by Mrs. Gould, "glorified secretaries," they acted at their peril. *See In re Schneider*, 271 B.R. 761, 764 (Bankr.D.Vt.2002) ("[T]he BPP moves at his or her peril when performing any service beyond that of simply typing the information provided by a prospective debtor on approved bankruptcy forms."). Section 110 itself proscribes virtually all conduct falling into the category of guidance or advice, effectively

---

[15] The Bankruptcy Court analogized from *Tegman v. Accident & Medical Investigations, Inc.*, 30 P.3d 8, 13 (Wash. Ct. App. 2001) *rev. granted in part,* 43 P.3d 21 (Wash. 2002) *and remanded,* 75 P.3d 497 (Wash. 2003).

[16] "When the third-party plaintiffs "helped" these debtors by filling in unsolicited answers, supplying relevant code sections, suggesting valuations, determining what court the petitions should be filed in, providing advice on how to answer certain questions, and crossing out questions that should have been answered, they did so negligently. As a direct result of that negligence, all of these debtors had their discharges challenged by the chapter 7 trustee, and were forced to hire counsel to defend themselves and prosecute the third-party defendants." Memorandum Opinion, p. 32.

restricting "petition preparers" to rendering only "scrivening/typing" services." *In re Rose*, 314

B.R. 663, 706 (Bankr. E.D. Tenn) (quoting *In re Guttierez*, 248 B.R. 287, 297

(Bankr.W.D.Tex.2000).

Appellants argue that at least one court has deemed a BPP questionnaire not to be the

unauthorized practice of law.  Appellants' Brief, p. 32, citing *In re Landry*, 268 B.R. 301 (Bankr.

M.D. Fla. 2001.  A full reading shows otherwise:

> The type of compensable services that a bankruptcy petition preparer can render
> are extremely limited. Petition preparers, who by definition are not attorneys,
> cannot give legal advice or otherwise engage in the unauthorized practice of law.
> *In re Guttierez*, 248 B.R. 287, 296, n. 25 (Bankr.W.D.Tex.2000) (See cases cited
> therein). Clearly, as recognized by the District Court, a bankruptcy petition
> preparer cannot assist the debtor in completing forms, provide legal advice that
> would assist a prospective debtor in making determinations as to which type of
> bankruptcy to file or which exemptions to take, or direct clients to particular legal
> publications or specific pages so that they can attempt to find legal answers on
> their own. The very act of directing a prospective debtor to review a particular
> section of a legal book in and of itself constitutes legal advice. By focusing on
> one answer and excluding others, the bankruptcy petition preparer steps over the
> line. As stated by the District Court, "Legal advice is legal advice, whether it
> comes directly from the petition preparer or indirectly via, for example, a
> bankruptcy treatise being recited by that preparer. Persons seeking legal
> assistance tend to place their trust in an individual purporting to have expertise in
> that area." *Florida Bar v. Brumbaugh*, 355 So.2d 1186 (Fla.1978).
> Therefore, a bankruptcy petition preparer can expect to receive compensation
> only for secretarial-type services. As stated by the United States Bankruptcy
> Court for the Western District of Texas in *Guttierez*:
>
> > So what does § 110 tacitly permit? The answer in a nutshell is "not
> > much." Section 110 itself proscribes virtually all conduct falling into
> > the category of guidance or advice, effectively restricting "petition
> > preparers" to rendering only "scrivening/typing" services. Anything
> > else--be it suggesting bankruptcy as an available remedy for a debtor's
> > financial problems, merely explaining how to fill out the schedules, or
> > answering questions about exemptions or whether a claim is or is not
> > secured will invariably contravene either state laws proscribing the
> > unauthorized practice of law or other more specific provisions of §
> > 110. The only service that a bankruptcy petition preparer can safely
> > offer and complete on behalf of a pro se debtor after the enactment of
> > § 110 is the "transcription" of dictated or handwritten notes prepared

> by the debtor prior to the debtor having sought out the petition
> preparer's service. Any other service provided on behalf of the debtor
> by a non-attorney (even telling the debtor where the information goes
> on the form) is not permitted under state unauthorized practice of law
> statutes, and so is also not authorized by § 110.

*Guttierez*, 248 B.R. at 297-98. Thus, under § 110, the services a bankruptcy
petition preparer can provide are extremely limited.

> A bankruptcy petition preparer can meet a prospective debtor, provide forms or
> *questionnaires for the debtor to complete without any assistance from the*
> *bankruptcy petition preparer*, transcribe the information supplied by the
> prospective debtor on the applicable bankruptcy forms without change,
> correction, or alteration, copy the pleadings, and gather all necessary related
> pleadings to file with the bankruptcy court. The bankruptcy petition preparer
> cannot improve upon the prospective debtor's answers, cannot counsel the client
> on options, and cannot otherwise provide legal assistance to the prospective
> debtor, directly or indirectly. However, to the extent the bankruptcy petition
> preparer provides the limited secretarial-type services, the preparer is entitled to
> receive reasonable compensation.

*In re Landry*, 268 B.R. at 303 - 305 (emphasis supplied).

Obviously, this authority cited by Appellants is not a rebuttal of the Bankruptcy Courts'

determination, because if a BPP is to supply a workbook or questionnaire, the BPP may not

include a charge for the same within the preparation fee because the BPP may not assist a

prospective petitioner in completing the workbook or questionnaire without transgressing into

the unauthorized practice of law as Appellants here did. *In re Rose*, 314 B.R. at 712 (services

beyond typing, even "hand-holding" support to petitioner in completing forms is unauthorized

and uncompensable, citing *In re Landry*).[17]  Whether or not there is some charge related solely to

providing a "workbook," the Goulds charged a single, comprehensive fee which the Bankruptcy

Court determined to be excessive because of the detriment experienced by Debtors as a result of

their dealings with the Goulds.  As the Bankruptcy Court noted, BPPs, including WTP, have

---

[17]  This Court notes that not included in the conduct of Appellants was the actual typing of the petition, which was performed by a WTP service center.  Memorandum Opinion, p. 45.; Joint Stipulations.   The *In re Rose* court found the same.  314 B.R. at 713.

failed to convince numerous courts of their proposition. Memorandum Opinion, pp. 33 & 54

citing *Scott v. United States Trustee (In re Doser)*, 292 B.R. 652, 659 (D.Idaho 2003) (We the

People Forms and Service Center of Boise) *aff'd* 412 F.3d 1056 (9th Cir. 2005); *In re Lucas*, 312

B.R. 559 (Bankr.D.Md.2004) (Fresh Start Solutions, Inc.); *In re Dunkle*, 272 B.R. 450, 456

(Bankr.W.D.Pa.2002) (DocuPro); *In re Bush*, 275 B.R. 69 (Bankr.D.Idaho 2002) (Self-Legal

Alternatives of Idaho, Inc.) ; *In re Gomez*, 259 B.R. 379 (Bankr.D.Colo.2001) (Eagle Paralegals,

LTD); *In re Moffett*, 263 B.R. 805, 813 (Bankr.W.D.Ky.2001) (Renee Yarrington, Paralegal).

Lastly, Appellants further misapprehend that their conduct, which the Bankruptcy Court

found to be directly linked to, and the cause of, the deficiencies and omissions in each of the

Statements and Schedules of the debtors in these cases, was the cause and substance of the

Bankruptcy Court's certification under 110(i), whether or not that conduct would be deemed to

be the unauthorized practice of law by the Tennessee Supreme Court.[18] Memorandum Opinion,

n. 10.

The UST separately alleged, and the Bankruptcy Court found, that Appellants violated §

110(k)[19] by engaging in the unauthorized practice of law. The Bankruptcy Court found that Ms.

Inmon received from Gould's WTP a number of documents ("Packet" or "WTP Packet")

described as follows:

> (1) a Bankruptcy Document Preparation Agreement stating that WTP are not
> attorneys and are prohibited from giving legal advice. The agreement also states
> that a WTP Supervising Attorney will assist if the debtor has questions but does

---

[18]  The Bankruptcy Court transmitted a copy of its decision to the Tennessee Supreme
Court.

[19]  The text of 11 U.S.C. § 110(k) effective at the time relevant here
states:  Nothing in this section shall be construed to permit activities that are otherwise
prohibited by law, including rules and laws that prohibit the unauthorized practice of law.

not represent the debtor. Finally the Agreement provides that the fee is $199 plus the bankruptcy court filing fee of $200; (2) a WTP Chapter 7 Petition Customer Information Workbook for Ms. Inmon to fill out for information to be included in her bankruptcy petition; (3) a "Bankruptcy Overview-Chapter 7-Tennessee" pamphlet that provided basic information about bankruptcy and included some common questions asked during a Creditors Meeting; (4) a Tennessee Bankruptcy Exemptions Table that shows a list of exemptions with the corresponding Tennessee Code Annotated sections; (5) a sheet entitled "Tips on Filing a Chapter 7 Bankruptcy" which included tips on tax refunds, excess income, and how to get a higher dollar exemption for use of a motor vehicle; (6) a "We the People Tennessee Step by Step Guide to Bankruptcy Workout" that included, among other things, instructions on how to fill out the workbook, examples of completed Statements and Schedules, and a list of Tennessee exemptions; (7) a list of where to file the bankruptcy petition entitled "Federal Bankruptcy Courts--Where to File Your Petition," broken down by city, county and district; and (8) a price list of all products offered by WTP.[20]

Memorandum Opinion, p. 41. The Bankruptcy Court noted that the WTP Packet received by Ms. Inmon was "substantially identical" to that received by the pro se debtor in *In re Rose,* which that court found to be legal advice disseminated by a non-attorney and a violation of 110(k). Memorandum Opinion, nn. 16 & 17. In reaching its determination that the conduct of Appellants was unfair and deceptive, the Bankruptcy Court was informed by the extensive examination of the *In re Rose* court, 314 B.R. at 696 - 701, which that court directed at the forms and documents in the WTP Packet in determining that the BPP there had engaged in the unauthorized practice of law. In addition, here, the WTP Packet is contained in the Joint Stipulation. Des. Rec., Doc. #9, (#13 therein); UST exhibits ## 6, 7, 8, 9, & 11.

The Bankruptcy Court concluded that the WTP Packet alone demonstrated both the unauthorized practice of law and unfair and deceptive conduct. When placed alongside the lack of testimony of Appellants countering the recollections of Debtors of Appellants' conduct in

---

[20] Copies of these forms as they applied to Ms. Inmon's case are part of the UST's exhibits.

counseling and advising Debtors, the Bankruptcy Court's findings with respect to § 110(k) are affirmed.

**D. The Bankruptcy Court correctly found that WTP USA is a bankruptcy petition preparer.**

Appellants argue that the Bankruptcy Court's finding that WTP USA is a bankruptcy petition preparer was without lawful basis. Appellants' Brief. P. 33. Appellants' argument is based on their own parsing of how a franchisor of bankruptcy petition preparation services differs from a franchisee offering the same services for purposes of compliance with § 110.

In Ms. Inmon's case, the Bankruptcy Court agreed with the allegations of the UST that WTP USA had violated §§ 110(b)(1), (c)(1) and (2),[21] both because the UST's exhibits showed that WTP USA did not comply with the requirements therein and because Appellants offered no rebuttal evidence on the failure of WTP USA to comply. Again, the Bankruptcy Court was able to construct a chart of the failings of WTP USA to provide the required disclosures and signatures. Memorandum Opinion, p. 49.

The Bankruptcy Court adopted the reasoning of other courts in finding that We the People, USA also qualified as a petition preparer under 11 U.S.C. § 110(a) so that §§ 110(b) and

---

[21] The text of 11 U.S.C. § 110(b) effective at the time relevant here states:
(b)(1) A bankruptcy petition preparer who prepares a document for filing shall sign the document and print on the document the preparer's name and address.
(2) A bankruptcy petition preparer who fails to comply with paragraph (1) may be fined not more than $500 for each such failure unless the failure is due to reasonable cause.
(c)(1) A bankruptcy petition preparer who prepares a document for filing shall place on the document, after the preparer's signature, an identifying number that identifies individuals who prepared the document.
(2) For purposes of this section, the identifying number of a bankruptcy petition preparer shall be the Social Security account number of each individual who prepared the document or assisted in its preparation.

Case 3:04-cv-00971     Document 58     Filed 03/28/06     Page 23 of 38 PageID #: 274

(c)[22] applied.  Memorandum Opinion, p. 46 (citing *In re Rose*, 314 B.R. 663, 2004 WL 2071772 (Bankr.E.D.Tenn.(Aug.18, 2004)) (finding WTP USA are petition preparers); *In re Paysour* 313 B.R. 109 (Bankr.E.D.N.Y.2004) (same); *In re Douglas*, 304 B.R. 223 (Bankr.D.Md.2003) (same); *In re Moore*, 290 B.R. 287 (Bankr.E.D.N.C.2003) (specifically addressing WTP USA's status and finding same); *In re Doser*, 281 B.R. 292 (Bankr.D.Idaho 2002) (same).

As the UST responds, Appellants' argument ignores the record and the factual findings of the Bankruptcy Court.  Appellees Brief, pp. 35 - 36.  On the UST's exhibit 1, Ms. Inmon's petition at question #4, the name "We The People USA" is listed as person or firm that assisted Ms. Inmon in preparing her petition.[23]  The UST's exhibits 2, 3, 4, 6 and 7 each include the name of WTP USA.[24]  Cert. Rec. Exs.  As the Bankruptcy Court found, Mr. Gould signed Ms. Inmon's petition in the required manner.  Mr. Gould testified that WTP USA receives a portion of his WTP office's fee, Mr. Gould's office did not type the petition documents, and a WTP processing center typed Debtors' information on the forms.  Memorandum Opinion, p. 45.

Although Appellants concede that a WTP USA employee received information from the Goulds and sent back to the Goulds the completed "work," Appellants argue, unsupported by authority indicating an erroneous conclusion of law of the Bankruptcy Court, that the franchisor /

---

[22] The text of 11 U.S.C. § 110(a) effective at the time relevant here states:
(a) In this section
(1) "bankruptcy petition preparer" means a person, other than an attorney or an employee of an attorney, who prepares for compensation a document for filing; and
(2) "document for filing" means a petition or any other document prepared for filing by a debtor in a United States bankruptcy court or a United States district court in connection with a case under this title.

[23] This form contains the following printing at the top margin: "Statement of Assistance of Non-Attorney - Local Rule 103" (Rev.6/9) 1998 USBC, Middle District of Tennessee."

[24] See n. 14, *supra*

24

franchisee arrangement removes WTP USA from the ambit of § 110(a). Without knowing whether Judge Matheson of the Colorado Bankruptcy Court received evidence similar to that here, the court will not apply that court's reasoning. Appellants Brief, p. 37, referencing Exhibit B, Rec. Doc. 36 - 4.

For the foregoing reasons, the court affirms the finding of the Bankruptcy Court that WTP USA is a bankruptcy petition preparer and subject to the fines ordered by the Bankruptcy Court.

## IV.

### A. The Bankruptcy Court properly adjudicated the third party complaints after dismissing the trustee's §727 actions.

Appellants argue that the Bankruptcy Court committed procedural error by adjudicating the Third Party Cases after dismissing the §727 actions.

The Appellants in their Brief direct the court to the transcript of the evidentiary hearing for testimony on this issue. Appellants' Brief, n. 18. The transcript records the statement of Ms. Azan, attorney representing Appellee Clippard, regarding her view of how a dismissal of the Waldschmidt Cases could affect the evidence available to her client in his adversary proceeding against the debtor Ms. Inmon. Ms. Azan requested a procedure that would make the testimony and evidence in the Smith, Toalson and Finch cases part of the record in the UST's Inmon adversary proceeding. Although Mr. Vihon objected to this request, after the Bankruptcy Court reiterated that the court intended, with its order of May 10, 2004 consolidating all four cases, to avoid the need to hear each case separately and to allow the court to consider all of the evidence together, Mr. Vihon withdrew his objection. Transcript, Vol. II, 158 - 160.

Case 3:04-cv-00971    Document 58    Filed 03/28/06    Page 25 of 38 PageID #: 276

The Bankruptcy Court read the third-party complaints to assert violations of 11 U.S.C. § 110 based on the costs to the debtors of defending the § 727 actions. Memorandum Opinion, p. 15. The Bankruptcy Court deemed the third party allegations of breach of contract and negligence as essentially issues falling under § 110(i) because "[a]ny liability against the third-party defendants under section 110(i) would necessarily incorporate the debtor's 'actual damages' for the resulting negligence and/or breach of contract." Memorandum Opinion, n. 6, see *infra*. As the Bankruptcy Court did not deny discharge to Smith, Toalson or Finch, there remained to be settled the liability for the costs of their defense. The Bankruptcy Court's characterization of the third-party complaints correctly recognizes that a debtor who suspects that the actions of a bankruptcy petition preparer caused the filing of a § 727 action in her case finds her remedy in § 110 for costs and damages. § 110(i)(1).[25]

Appellants argue that, under Federal Rule of Civil Procedure 14(a), the crucial characteristic of a third-party claim is the attempt of the original defendant to transfer the liability asserted against her to the third-party defendant, and if the original defendant is relieved of liability, so is the third party defendant relieved. Appellants Brief, p. 11.

However, the authority of the court cited by Appellants supports the Bankruptcy Court's characterization regarding the viability of the third-party complaints as actions as actions under § 110, and not the Appellants' argument that those complaints should have been dismissed because of the dismissal of the original § 727 actions. Appellants' Brief, n. 20. The principle was stated in *Kelly v. Metro. County Bd. of Educ. of Nashville*, 372 F.Supp. 528, 534 (M.D. Tenn. 1973): "[T]he legal relationship between the [third-party plaintiff and third-party defendant] is

---

[25] Section 110(i) provides that "[t]he debtor, the trustee, or a creditor" may move the district court for an order against a BPP. 11 U.S.C. § 110(i).

immaterial and the 'sole inquiry [] is whether the [original] plaintiff could have joined the third-party defendant in the original suit.'") (internal citations omitted).

For the Appellants' view to be correct, the Code would have to authorize trustees to name parties such as the Appellants in § 727 discharge complaints, a fatally faulty proposition because the Appellants are non-debtors. The Bankruptcy Court's holding leads to the correct conclusion that, when a debtor incurs costs to defend against a trustee's § 727 action alleging deficiencies in the debtor's petition, whether or not the debtor suffers damages associated with a denial of discharge, the debtor on her own has available the separate remedy of an action under § 110 against a BPP whom the debtor paid to assist with her petition.

The Appellee's Brief does not address this issue.

**B.     Appellants did not have the right to a jury trial.**

Appellants contend that the Bankruptcy Court denied their right to a jury trial on the UST's and panel trustee's allegations under § 110. Appellants Brief, p. 12.

The Memorandum Opinion that is the subject of this appeal was issued, as noted above, pursuant to an evidentiary hearing, not a jury trial. The Memorandum Opinion contains no reference to a demand for jury trial.[26] Appellants contend that they demanded a jury trial in their Answers to the complaints of the UST and third-party complaints. Appellants' Reply Brief, p. 5. Appellants designated their Answer in Ms. Inmon's case (03-475) as an item to be included in the Record on Appeal. However, that document is not included in the Record on Appeal. Nevertheless, the authorities presented by Appellants would not support their argument even if it were properly preserved.

---

[26] 28 U.S.C. 157(e); Fed. R. Civ. P. 38.

27

Appellants offer *Curtis v. Loether*, 415 U.S. 189, 194 , 94 S.Ct. 1005, 1008, 39 L.Ed. 260, 18 Fed. R. Serv. 2d 189 (1974).  There, the petitioner, who had alleged violations by the respondents of the fair housing provisions of the Civil Rights Act of 1968, argued that the respondents' demand for a jury trial should be denied because the violations in question were of statutory provisions.  *Curtis* at 190 - 191, 1006.  The petitioner's  argument included the example that the statutory bankruptcy courts created under the Bankruptcy Act could dispose of preference actions without a jury trial.  *Curtis* at 195, 1009.  The Supreme Court disagreed and held that "[t]he Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law."  *Curtis* at 195, 1009.  The Supreme Court reasoned that the scheme of legal rights created under the Civil Rights Act differed from the equitable rights created by the Bankruptcy Act, and so the Seventh Amendment did apply to the Civil Rights Act.  *Id*.  However, the Supreme Court did agreed that bankruptcy courts, traditionally viewed as courts of equity, were validly entrusted by Congress to enforce statutory bankruptcy rights without the strictures of jury trials.  *Id*.

Appellants offer *Cox v. Billy Pounds Motors, Inc. (In re Cox)*, 214 B.R. 635, n.4 (Bankr. N.D. Ala. 1997) for further support of their right to a jury trial.[27]  That case involved the bankruptcy court's calculation of damages for a willful violation of the automatic stay.  214 B.R. at 637 - 638, 643.  Appellant cites the case for the view of the Sixth Circuit on jury trials in bankruptcy proceedings.  The Northern District of Alabama is in the Eleventh Circuit. Nevertheless, the *In re Cox* court discussed the shared view of the Supreme Court and the

---

[27]  At the footnote cited by Appellants, the bankruptcy court noted that neither party requested a jury trial.  *Id*. at n. 4.

28

Eleventh Circuit on the procedural standard for awarding "serious" damages in citing *Int'l Union, United Mine Workers of American v. Bagwell*, 512 U.S. 821, 114 S.Ct. 2552 (1994) (distinguishing between "serious" criminal contempt involving imprisonment of six months (jury required) and civil contempt involving penalties to compel future compliance with a court order (no jury required) (internal citations omitted). *Id.*

Appellants offer *U.S. v. Troxler Hosiery Co., Inc.*, 681 F.2d 934 (4th Cir. 1982). That case addresses the Sixth Amendment right to jury trial in the face of criminal contempt charges under Title 18 of the United States Code. The Fourth Circuit noted the Supreme Court's desire for a bright line test for the Sixth Amendment right that distinguishes between serious and petty punishments of imprisonment, while following a less clear test for money fines. *Id.* at 936. In providing context for the foregoing principle, the Fourth Circuit noted that, for individual defendants, courts follow a bright line test for both imprisonment and money fines. *Id.* at n.2. For this court, this authority provides no guidance because, as stated above, the statutory provision here governing bankruptcy petition preparers resides in Title 11, not Title 18, of the United States Code.[28]

Lastly, Appellants offer *United States v. Stelweck (In re Stelweck)*, 86. B.R. 833, 845 (Bankr. E.D. Pa. 1988). There, the government alleged that the chapter 7 debtors had defrauded the Medicare program. The government sought from the bankruptcy court both a determination of a fine for the fraud and a determination of non-dischargeability for the fine. *Id.* at 845. The bankruptcy court reasoned that a dischargeability determination, for which there was no jury trial

---

[28] As the UST states, Congress intended § 110 as a consumer protection statute. Appellee Brief, nn. 49 & 52; *see* H.R. Rep. 102-834, 103rd Cong., 2nd Sess. 40-41 (Oct. 4, 1994; 140 cong. Rec. H10770 (Oct. 4, 1994).

29

right, was a decidedly different exercise from the determination of damages, for which a jury trial right might exist. *Id.* However, the court cannot find in *In re Stelweck* any of the wording quoted by Appellant to the effect that "[n]o fine can be imposed over $500 against an individual without a jury trial or waiver of the right." Appellants' Brief, n. 23.

Appellees argue in response that, when private rights become so intertwined with the public rights created under federal bankruptcy law, then the equitable principle underlying the statutory scheme of bankruptcy dominates, so that the Seventh Amendment right to a jury does not apply. Appellees' Brief, 29 - 30. The case law offered by Appellees supports this view: *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, n. 4, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989) ("If a claim that is legal in nature asserts a "public right," . . . then the Seventh Amendment does not entitle parties to a jury trial if Congress assigns its adjudication to an administrative agency or specialized court of equity."); *In re Graves*, 279 B.R. at 272(statutory equitable actions involving "public rights," such as the injunction authorized by §110(j), are not entitled to the Seventh Amendment jury right).

The court first determines if the actions filed under §110 are "core proceedings," because if they are, the Bankruptcy Court had jurisdiction under §1334(b) and 157(b)(1), and Appellants had no Seventh Amendment right to a jury trial. *Granfinanciera, S.A.*, 492 U.S. at 50, 109 S.Ct. at 2794, 106 L.Ed.2d 26 (bankruptcy judges may adjudicate without juries "core proceedings" so designated under the 1984 Amendments to the Code); *Id.* at 53 ("[I]f congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder."); *Id.* at 53 - 54 ("public rights" are not limited to causes involving the Federal Government in its sovereign capacity) (citing *Thomas v. Union Carbide Agricultural Prod. Co.*,

473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1989); *Id.* at 54 (a public right is found where the cause "arises in the context of a federal regulatory scheme that virtually occupies the field) (citing *Thomas*, 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409).

This court agrees with other courts, including the Bankruptcy Court, that have found that the actions of BPPs undeniably have an impact on the administration of the bankruptcy case itself, and therefore actions under § 110 are core proceedings as contemplated by 28 U.S.C. § 157(b)(2)(A). *See Martini v. We the People Forms & Service Centers, USA, Inc. (In re Barcelo)*, 313 B.R. 135, 151 (Bankr. E.D.N.Y. 2004) and the cases cited therein. The court determines that, pursuant to 28 U.S.C. § 157(b)(3), the Bankruptcy Court had jurisdiction over the subject adversary proceedings grounded in §110 because the causes of action alleged in the adversary proceedings could only arise in a bankruptcy case. *In re Barcelo* at 151 (citing *Michigan Employment Sec. Comm'n v. Wolverine Radio Company, Inc. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1144 (6th Cir. 1991). In finding that actions filed under § 110 are core proceedings, the court adopts the view that, while § 110(i) provides that final determination of the therein remedies be determined by the district court after certfication from the bankruptcy court, nothing in §§ 110(b) - (h) & (j) suggests that a bankruptcy court is not authorized to impose the remedies prescribed therein. *In re Graves*, 279 B.R. at 271; *In re Barcelo*, 313 B.R. at 150. Therefore, because the Appellees' actions were core proceedings, Appellants had no right to a jury trial.

**C. Appellants cannot demonstrate that Congress exceeded its constitutional authority in enacting 11 U.S.C. § 110.**

As occurred in the Eastern District of Tennessee, Appellants now argue for the first time here that Congress exceeded its authority in enacting 11 U.S.C. § 110 and that the same section is vague and overbroad. *In re Rose*, 314 B.R. at 685 (Mr. Vihon appearing for Respondent Ms.

Kristin Motley d/b/a We the People Forms and Service Center of Knoxville on Post-Trial Brief pursuant to hearing on Orders to Show Cause why Ms. Motley had not violated § 110).

The court reads Appellants' constitutional argument to be that the subject matter addressed in § 110 must at least fall within the principle stated in *Pacor, Inc. v. Higgins, supra,* because only then can the bankruptcy court exercise jurisdiction within the limits Appellant believes are described in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 445 U.S. 50, 102 S.Ct. 2858, L.Ed.2d 598 (1982). Appellants Brief, pp. 20 - 21. Appellants' argument concedes that, if the conduct regulated under § 110 is at least 'related to" subject matter, then Congress has legislated within its grant of authority under the Constitution. Specifically, the test proposed by Appellant is: would such legislation "[f]urther the great end of the subject - distribution and discharge - [which] are (sic) in the competency and discretion of Congress." Appellants' Brief, p. 20 (citing *In re C.F. Foods, Inc.*, 2001 WL 1632272 (E.D.Pa. 2001). Appellant argues that this articulation complements the principle of "related to" jurisdiction, that is whether "[t]he outcome could alter the debtor's rights, liabilities, options or freedom of action . . . and which in any way impacts upon the handling and administration of the bankruptcy case." Appellants Brief, p.21 (citing *In re Wolverine Radio Co.,* 930 F.2d at 1144 (6th Cir. 1991) and *In re Dow Corning, Corp.*, 86 F.3d 482, 489 (6th Cir. 1996)).

Nevertheless, Appellants' Article I argument begins by proposing that the subject of bankruptcies, about which Article I does authorize Congress to legislate, "cannot be extended so far as to reach the conduct of persons who simply (sic) provide a service to *individuals* by giving and assisting them to *fill-out forms* to be used by them to represent themselves to *commence a case* under the Bankruptcy Code." Appellants' Brief, p. 20 (no authority indicated) (emphasis supplied).

32

This proposition in part paraphrases the substance of §§ 301 (filing a petition commences a voluntary case and activates the automatic stay), 101(42) ("petition" means petition filed under § 301, among others, commencing a case), § 101(41) ("person" includes individual), § 109(a), (b), (d), (e), (g) (person(s) or individual who may be a debtor). Appellants' argument in its remaining part proposes that "[t]he BPP in no way is involved in the bankruptcy case, once commenced" because Appellants' services, that is, "prepara[tion] for compensation [of] a document for filing," *see* § 110(a)(1) & (2), are complete before federal jurisdiction is invoked.

Therefore, the question is whether Congress is authorized under Article I to enact legislation regarding bankruptcy which includes as its subject matter the preparation of a document for filing when the act of preparation necessarily occurs earlier in time than the time the petition is filed.

Congress has so legislated elsewhere in the Code. Section 521 requires a debtor to "file a list of creditors." The manner for complying is set forth in Fed. R. Bankr. P. 1007, which requires that "[t]he debtor shall file *with the petition* a list . . . . of each creditor, unless the *petition* is accompanied by a schedule of liabilities." (court's emphasis); *see also* (124 Cong. Rec. H. 11095 (Sept. 28, 1978)). Reason and fair inference dictate that a bankruptcy court addressing compliance therewith will be examining conduct of the debtor prior to the commencement of the debtor's case, because, to state the obvious, the list of creditors or schedule of liabilities must be prepared before the commencement of the case in order for either the list or the schedule to be filed with the petition. *Dolan v. U.S. Postal Service*, 125 S.Ct. 1252, 1257, 74 USLW 4132 (Feb. 22, 2006) ("Interpretation of a word or phrase depends upon reading the statutory text, considering the purpose and context of the statute, and consulting any precedents of authorities that inform the analysis.") (Kennedy, J.)

33

Section 727(a)(2)(A) denies a discharge to a debtor who "within one year *before* the date of the filing of the petition" acts to prevent the estate's access to property of the debtor. (court's emphasis). Congress determined that the provisions of § 727(a) are at "[t]he heart of the fresh start provision of the bankruptcy law." (S. Rept. No. 95-989 to accompany S. 2266, 95th Cong., 2d Sess. (1978) p. 99). A bankruptcy court, asked to examine a debtor's compliance with § 727, need not engage even in a inferential interpretation of the text of the statute to know that the time period to be examined is the period of time within one year prior to the commencement of the case in question.

The reason that §§ 521, 727 and 110 govern at least "related to" matters is that"[t]he outcome [of compliance therewith] could alter the debtor's rights, liabilities, options or freedom of action . . . and . . . impacts upon the handling and administration of the bankruptcy case." *In re Dow Corning, Corp.*, 86 F.3d 482, 489, *supra*.

To the complete this inquiry, the court adopts the following reasoning from *In re Rose*:

> Quite clearly, the provisions of § 110 cannot be triggered absent a case arising under title 11. Additionally, "[t]here can be no more fundamental exercise of core subject matter jurisdiction by the bankruptcy court than its policing of professionals whom debtors pay to render service in connection with their cases." *McDow v. We the People Forms & Serv. Ctrs., Inc. (In re Douglas)*, 304 B.R. 223, 232 (Bankr.D.Md.2003); see also *Taub v. Weber*, 366 F.3d 966, 968 (9th Cir.2004) ("Bankruptcy courts have the power to regulate the activities of bankruptcy petition preparers under 11 U.S.C. § 110."); *In re Moore*, 283 B.R. 852, 857 (Bankr.E.D.N.C.2002) ("[B]ecause the petition and schedules are at the heart of the bankruptcy process, matters attendant to [their] preparation are 'core' proceedings."); *Robiner v. Home Owners Rescue Serv. (In re Webb)*, 227 B.R. 494, 497 (Bankr.S.D.Ohio 1998) (finding that actions under § 110 are core, arise directly under title 11, and directly affect the administration of a debtor's bankruptcy estate). Accordingly, the court is convinced that it is authorized to hear and adjudicate matters concerning § 110 and any violations thereof.

*In re Rose*, 314 B.R. at 683.

**D.  Appellants have not demonstrated that § 110 impermissibly infringes on their right of free speech.**

Appellants are aware of the rejection by other courts of their free speech argument.  *In re Rose*, 314 B.R. at 668 - 691 (Mr. Vihon appearing for BPP); *In re Barcelo*, 313 B.R. at 145 - 150 (same); *In re Doser*, 412 F.3d 1056, 1063 (same) (citing *In re Barcelo, supra*).  The reasoning therein rejecting Appellants' argument that § 110 infringes on free speech rights is adopted here. *Central Hudson Gas & Elec. Corp v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) ("*Central Hudson*") and *Greater New Orleans Broad. Ass'n v. United States*, 527 U.S. 173, 188, 119 S.Ct. 1923, 144 L.Ed.2d 161 (1999) ("*Greater New Orleans*") teach that the protection of speech may be limited with substantial discretion by Congress when enacting legislation dealing with commercial speech that is fraudulent, unfair or deceptive.  *In re Barcelo*, 313 B.R. at 147.  *Central Hudson* adopted a four-part test for the protection of commercial speech:

> For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest.

*In re Barcelo*, 313 B.R. at 147 (quoting *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343).

The first inquiry is whether the commercial speech at issue concerns lawful activity and is not misleading.  313 B.R. at 147 (citing *Central Hudson*, *supra).*  Because the *In re Barcelo* court was dealing with a motion to dismiss a complaint of the UST alleging that a BPP had engaged in fraudulent and deceptive conduct detrimental to debtors*,* the court reasoned that its

35

*Central Hudson* inquiry could not stop with examining allegations which were yet unproven. *Id*.at 147.[29]

Here, the court is presented with both the fact of the detriment brought upon debtors by the § 727 actions and findings of the Bankruptcy Court that Appellants' conduct towards the debtors was at least "unfair" if not "fraudulent and deceptive," which the court has endorsed above and Appellants have not rebutted. Therefore, Appellants cannot seek to have their conduct protected by the First Amendment. That would be the case only if Appellants' conduct fully complied with § 110, which does not impermissibly infringe on a BPP's First Amendment rights.

### E.  Appellants have not demonstrated that § 110 is and vague and overbroad.

Appellants argue that §§ 110(h), (i) are (j) are vague and overbroad because the text therein fails to provide fair notice to a person of ordinary intelligence of the conduct to be sanctioned as set forth in *Papachristou v. City of Jacksonville*, 405 U.S. 156, 156 (1972). Appellants Brief, p. 24 - 25.

Section 110 is not unconstitutionally vague. Fair notice is provided when prohibitions are clearly defined, but such definition does not limit courts to a mechanical application which

_____

[29]  The court determined that § 110 addressed the substantial governmental interest in the regulation of those not trained in bankruptcy law, in insuring the careful and accurate preparation of bankruptcy petitions, and protecting unsuspecting prospective debtors from the tangible harms of conduct that is misguiding, fraudulent and deceptive. 313 B.R. at 148. (citing legislative history and *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). Next, the court determined that § 110 clearly and directly advances the government's interest in regulating BPPs. *Id*. Lastly, the court determined that § 110 is appropriately tailored, and the fines therein are proportionate to the harms addressed. *Id*. (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 417 (1993).

would lack relevance to the subject of the regulation.  *In re Rose*, 314 B.R. 688 - 689 (applying *Grayned v. City of Rockford*, 408 U.S. 104, 92 S.Ct. 2294, 2298-99, 33 L.Ed.2d 222 (1972) and *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 102 S.Ct. 1186, 1193, 71 L.Ed2d 362 (1982).

Appellee points out that numerous courts have carefully examined and parsed the text of the subsections in question and found that both the prohibited conduct and the resultant sanctions are clearly defined, identifiable under ordinary facts and circumstances, and amenable to application without a subjective analysis.  *In re Rose*, 314 B.R. at 688 -690 (§ 110 not vague because ordinary person can deduce meaning); *In re Barcelo*, 313 B.R. at 144 -45 (general terms do not render statute unconstitutionally vague when it would be impossible for Congress to codify a list); *In re Doser*, 292 B.R. at 658 (statute provides definitions which constitutionally place person of ordinary intelligence on notice of prohibited conduct"); *In re Moore*, 290 B.R. 287, 297 - 98 (§ 110(h) clearly WTP franchisee limits to typing documents as directed by customers); *In re Bush*, 275 B.R. 69, 84 - 85 (Bankr. D. Idaho 2002 (same); *In re Gutitierez*, 248 B.R. 287, 299 (Bankr. W.D. Texas 200) (same).

Appellee is equally correct in stating that courts have determined that § 110 is not overbroad.  *See In re Rose*, 314 B.R. at 688 -690 (examining § 110 in light of *N.Y. State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 108 S.Ct. 2225, 2233, 101 L.Ed.2d 1 (1998) (party challenging statute must show law could never be applied in valid manner) (internal citations omitted);  *In re Doser*, 292 B.R. at 660 - 61 (statute cannot be deemed overbroad when it covers a range of easily identifiable and constitutionally proscribable conduct) (citing *Secretary of State of Maryland v. J.H. Munson Co.*, 467 U.S. 947, 964 0 65, 104 S.Ct. 2839, 2851, 81 L.Ed.2d 785 (1984) (quotations omitted in original).

Appellants' argument includes the contention that the Bankruptcy Court employed the "I know it when I see it" standard to determine the range of conduct prohibited by § 110.[30] Appellants' Brief, p. 25. However, Appellants' argument is unsupported by any authority. *See In re Rose*, 314 B.R. at 691. Nevertheless, the court finds the opposite. As a sufficient instance, among the others above, of the particularity and authority applied by the Bankruptcy Court is the following:

> [j]ust the practice of referring debtors to a 'supervising attorney' who could provide no representation of the debtors was an unfair and deceptive practice. It provided the debtors with a false sense of security that their legal needs could be met. *See In re Rose*, 314 B.R. 663, 2004 WL 2071772 (Bankr.E.D.Tenn.(Aug.18, 2004)) (finding WTP practice of referring debtors to a "supervising attorney" for general legal questions was questionable because debtors are given a false sense of security); *In re Moore*, 290 B.R. 287 (Bankr.E.D.N.C.2003) (finding that WTP's method of referring customers to a supervising attorney is unfair and deceptive because customers are not informed that they cannot rely on that attorney's advice).

Memorandum Opinion, n. 7.

The court rejects Appellants' arguments that § 110 is unconstitutionally vague and overbroad.

It is so **ORDERED.**

Enter this 28th day of March 2006.

_____
ALETA A. TRAUGER
U.S. District Judge

---

[30] The court has approved above of the Bankruptcy Court's determination that the third-party allegations of negligence and breach of contract were about violations of § 110(i) because, in the circumstances, the allegations were of fraudulent, unfair or deceptive acts.

38